# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## BILLINGS DIVISION

| | |
|---|---|
| TODD KENNETH HOROB, | Cause No.  CV 09-156-BLG-RFC-CSO |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| McCONE COUNTY, | |
| Defendant. | |

Pending is Defendant McCone County's Motion for Summary Judgment (Court Doc. 34), Plaintiff Todd Horob's Letter of Concern to the Court (Court Doc. 41), Horob's Motion to Vacate this Court's Order dated October 1, 2010 (Court Doc. 45), Horob's Motion to Amend (Court Doc. 49), and Horob's Motion to Test the Court Record (Court Doc. 51).

Horob's Motions will be denied and, due to the lack of evidence filed in support of Horob's claims, the Court will recommend Defendant's Motion for Summary Judgment be granted.

ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT SUMMARY JUDGMENT–CV 09-00156-BLG-RFC-CSO/ PAGE 1

## I.  LETTER OF CONCERN

### A.    NOTICE OF DEPOSITION

On September 27, 2010, Horob filed a document entitled Letter of Concern to the Court.  (Court Doc. 41).  In that document, Horob complains that he did not receive notice of the August 16, 2010 deposition of Dr. Jon Kolstad and that the record in his criminal case has been altered.  He states no claim for a remedy in this document.

Defendant responded by providing documentary evidence that Horob was served with the Notice of Taking Kolstad's Deposition on August 3, 2010.  The deposition was noticed for August 16, 2010.  An Amended Notice of Taking Deposition was served on Horob on August 4, 2010.  In addition, the deposition was the topic of McCone County's Motion for Extension of Time to Complete Depositions which was served on Horob on August 11, 2010.  (Court Doc. 28).  Counsel for McCone County also sent a letter via facsimile to Horob dated August 11, 2010, wherein the deposition and the Motion for Extension of Time to Complete Depositions were discussed.  The Court granted Defendant's Motion for Extension by text order dated August 12, 2010 and the Court

ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT SUMMARY JUDGMENT–CV 09-00156-BLG-RFC-CSO/ PAGE 2

docket indicates a copy of that ruling was mailed to Horob on August 12, 2000. (Court Doc. 29). There is no indication in the record that the Court's ruling was returned in the mail.

Counsel for McCone County produced phone records indicating he tried (unsuccessfully) to contact Horob by telephone six times on the morning of the deposition with the intent to assist Horob in participating in the deposition if necessary. Counsel was only able to leave message for Horob with his case manager.

Horob did not reply to Defendant's response. Given the undisputed evidence that Horob was given proper notice of the deposition, the Court will take no action in this regard and has considered Dr. Kolstad's deposition in the analysis of Defendant's Motion for Summary.

## B. ISSUES RE. COURT RECORD

Horob continues to argue about an alleged altered court record from his criminal proceeding. Horob also discusses the alleged alteration in his response to the Motion for Summary Judgment. None of the alleged "alterations" have any bearing on the determination of

McCone County's liability in this case.

No action will be taken with regard to Horob's letter of concern.

## II.  MOTION TO VACATE ORDER OF OCTOBER 1, 2010

Horob moves to vacate this Court's Order of October 1, 2010 (Court Doc. 43) which denied Horob's "Motion to Dismiss Magistrate Judge Carolyn S. Ostby."  (Court Doc. 37).  Horob's Motion to Vacate is construed as a motion for reconsideration and will be denied for two reasons.

First, Horob does not meet the standards of Local Rule 7.3.  That is, he has not filed a motion for leave to file a motion for reconsideration, and he cannot establish that the facts and applicable law are materially different from the facts and law presented to the Court before its initial denial of the motion to recuse or that new facts or law have emerged since the Court's October 1, 2010 Order.

Second, Horob presented no new argument to convince the Court that the prior denial of the motion to recuse was inappropriate.  As set forth in the Court's prior Order, Horob's allegations do not present reasonable grounds for a finding of bias or appearance of bias.  There is

no basis upon which to question the Court's impartiality in this matter and Horob has provided no specific basis that suggests bias.  The Motion to Vacate will be denied.

## III.  MOTION TO AMEND

On November 3, 2010, Horob filed his second Motion to Amend seeking to add opposing counsel and the B.O.P. of Leavenworth, Kansas for failing to notify him about the deposition of Dr. Kolstad on August 16, 2010.  As set forth in the Court's Order denying Horob's first motion to amend, this motion is untimely filed in that the deadlines to amend, to complete discovery, and to file motions as set by the Court's January 14, 2010 Scheduling Order have all passed.

Horob makes no showing of due diligence and provides no justification for his late motion to amend.  Defendant has filed a dispositive motion which this Court is recommending be granted.  To allow Horob to amend his complaint at this late date to bring in additional defendants would be prejudicial and would significantly delay the resolution of this case.

## IV.  MOTION TO TEST COURT RECORD

Horob's latest motion is a Motion to Test the Court Record in Case No. CR-08-93-BLG-RFC.  (Court Doc. 51).  As in his letter of concern, Horob continues to argue about an alleged altered court record from his criminal proceeding.  No alleged "alterations" of the Court record in the criminal case have any bearing on the determination of McCone County's liability in this case.

The motion to test the court record must be denied.

## V.  SUMMARY JUDGMENT

### A.  STANDARD

A party is entitled to summary judgment if they can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  That is, where the documentary evidence permits only one conclusion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, it believes

demonstrate the absence of any genuine issue of material fact. <u>Celotex</u>

<u>Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Where the moving party has met its initial burden with a properly

supported motion, the party opposing the motion "may not rest upon the

mere allegations or denials of his pleading, but . . . must set forth

specific facts showing that there is a genuine issue for trial." <u>Anderson</u>,

477 U.S. at 248. The non-moving party may do this by use of affidavits

(including his own), depositions, answers to interrogatories, and

admissions. <u>Id</u>. Only disputes over facts that might affect the outcome

of the suit under the governing law are "material" and will properly

preclude entry of summary judgment. <u>Id</u>.

At the summary judgment stage, the judge's function is not to

weigh the evidence or determine the truth of the matter, but to

determine whether there is a genuine issue for trial. If the evidence is

merely colorable or is not significantly probative, summary judgment

may be granted. <u>Anderson</u>, 477 U.S. at 249-50.

The mere existence of a scintilla of evidence in support of the

> [non-moving party's] position will be insufficient; there must
> be evidence on which the jury could reasonably find for the
> [non-moving party].  The judge's inquiry, therefore,
> unavoidably asks whether reasonable jurors could find by a
> preponderance of the evidence that the plaintiff is entitled to
> a verdict.

Anderson, 477 U.S. at 252.

In the context of a motion for summary judgment where a litigant is proceeding pro se, the Court has an obligation to construe pro se documents liberally and to afford the pro se litigant the benefit of any doubt.  Erickson v. Pardus, 551 U.S. 89, 127 S.Ct 2197, 2200 (2007) (per curiam); Baker v. McNeil Island Corrections Ctr., 859 F.2d 124, 127 (9th Cir. 1988).

## B.  ALLEGATIONS

Horob's Complaint first alleges the McCone County Courthouse in Circle, Montana has no handicap access for wheel chairs and no handicap access to restrooms.  (Court Doc. 1, p. 2, ¶¶ 5-6).

Second, Horob alleges McCone County refused to take him for medical attention while he was in the custody of McCone County. (Court Doc. 1, p. 2, ¶ 7).  He contended in his deposition that McCone

County refused to give Valley County (where he was being held)

permission to get medical treatment.  (Court Doc. 35-4, p. 10, Lines 11-

18).  His Complaint alleges he suffered a loss of vision due to McCone

County's refusal to take care of him and transporting him many miles

when he was suffering from very high blood pressure.  (Court Doc. 1, p.

2, ¶ 7).

### C.  UNDISPUTED FACTS

Horob did not file a Statement of Genuine Issues as required by

Local Rule 56.1(b).  Because he is proceeding pro se, the Court will

consider Horob's other filings to determine if summary judgment should

be granted.  To the extent Horob did not specifically dispute

Defendants' Statement of Undisputed Facts in other filings, Defendants'

facts are deemed undisputed.

On November 22, 2006. Horob was charged by information with

deceptive practices pursuant to a common scheme (Court Doc.

35–Statement of Undisputed Facts ("SUF"), ¶ 1).  Horob was arrested

on November 28, 2006.  (Court Doc. 35–SUF, ¶ 2).  Because McCone

County does not have a jail, Horob was held in Valley County Jail in

Glasgow, Montana.  (Court Doc. 35–SUF, ¶ 3).

On December 6, 2006, Horob was transported from Glasgow to Sidney by McCone County Deputy Sheriff Paul Skyberg for his initial appearance.  (Court Doc. 35–SUF, ¶ 4).  Horob contends that, on the morning before he was transported to Sidney,  he suffered "blurry" vision in his left eye.  He alleges he lost vision in his left eye later that night.  (Court Doc. 35–SUF, ¶ 6).

On or about December 7, 2006, after his return to Glasgow from Sidney, Horob was taken to the emergency room at France Mahon Deaconess Hospital in Glasgow.  (Court Doc. 35–SUF, ¶ 7).

Sometime thereafter, a sheriff's deputy took Horob to be seen by Jon Kolstad, D.O.  (Court Doc. 35-4--Horob Deposition, p. 13; Court Doc. 35-6--Kolstad Deposition, p. 3).  Dr. Kolstad's records indicate that this visit occurred on December 8, 2006.  (Court Doc. 35-7).  Horob disputes that he was seen by Dr. Kolstad on December 8, 2006.  (Court Doc. 39—Horob Affidavit).  Regardless of the specific date, it is undisputed (Horob testified to it at his deposition) that after Horob lost vision in his left eye, Deputy Glen Meier took him to see Dr. Kolstad.  (Court Doc.

35-4--Horob's Deposition, pp. 13-14).

Dr. Kolstad diagnosed Horob with possible ischemic optic neuropathy secondary to recent blood pressure issues but he noted the active pupil function did not fully support this diagnosis.  He also noted the possibility that Horob was malingering or being deceptive in his responses.  (Court Doc. 35-6 at 5-7).  "Ischemic optic neuropathy" refers to a stroke which cuts off blood supply to the eye, thereby killing the nerve, and causing a loss of vision for which there is no treatment. (Court Doc. 35–SUF, ¶ 12).  Dr. Kolstad could not objectively verify Horob's loss of vision, and without this verification, the diagnosis of ischemic optic neuropathy could not be confirmed.  (Court Doc. 35–SUF, ¶ 13).  Dr. Kolstad recommended that Horob see him again in six months.  Horob returned to Dr. Kolstad's office for an exam on June 25, 2007 and the results of that exam were the same as the first exam. (Court Doc. 35–SUF, ¶ 10).

Horob was released from custody on or about December 9, 2006. (Court Doc. 35–SUF, ¶ 9).

Dr. Kolstad testified that, in his opinion, even if Horob suffered

from ischemic optic neuropathy, it could not have been prevented even if Horob had been "sitting on a surgeon's bed" once he became symptomatic.  (Court Doc. 35–SUF, ¶ 15).

Nearly two and a half years later, on April 2, 2009, a sentencing and show cause hearing was held in McCone County District Court. There, Horob was required to show cause why he missed a March 5, 2009 sentencing hearing.  Horob was found in contempt of court for missing said hearing.  (Court Doc. 35–SUF, ¶ 21).  It was noted in the Order for Contempt of Court that Horob appeared at his show cause hearing of April 2, 2009 in a wheelchair.  (Court Doc. 35–SUF, ¶ 22).

When Horob was asked at his deposition why he was in a wheelchair, he responded, "I don't know."  Court Doc. 35-4 at 6, lines 21-22.  Horob could not identify any doctor who prescribed a wheelchair for him (*Id.* at 6-7), nor could he state who provided the wheelchair.  (Court Doc. 35–SUF, ¶ 26).  Horob could not state when he began using the wheelchair nor could he state when he stopped using the wheelchair. (Court Doc. 35–SUF, ¶ 27).  Defendant's evidence states that the wheelchair was obtained by McCone County Undersheriff Lonny Jensen

from a nursing home in Circle for the purpose of assisting Horob into the McCone County Courthouse on April 2, 2009, because, upon his arrival, Horob alleged he could not walk.  (Court Doc. 35–SUF, ¶ 28).

Undersheriff Jensen and two other individuals carried Horob in his wheelchair into the Courthouse so he could attend his hearings. Undersheriff Jensen offered Horob lunch and assistance in using the restroom if necessary, but Horob refused the offer.  Horob could not recall missing any appearances as a result of the alleged lack of accessibility in the McCone County Courthouse.

Horob alleges that, because the restrooms at the Courthouse were not wheelchair accessible, he must have wet himself because an unidentified nurse at the Circle Clinic (where he went after the April 2, 2009 hearing) told him it looked as if he had been wetting himself all day.  Horob could not say when he would have wet himself, he could only say he remembers feeling wet.  Horob could not recall asking any employee of McCone County if he could use the restroom.  Court Doc. 35-4 at 5-6.

Sheriff Harris helped carry Horob out of the McCone County

ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT SUMMARY JUDGMENT–CV 09-00156-BLG-RFC-CSO/ PAGE 13

Courthouse upon the conclusion of Horob's April 2, 2009 hearings and returned the wheelchair to the nursing home.

### D.   ANALYSIS

Horob's Complaint provides only factual allegations and does not delineate specific causes of action.  Because he filed this action in federal court, the Court will presume Horob seeks to bring federal claims under 42 U.S.C. § 1983 and the Americans with Disabilities Act, as well as state law negligence claims.

### 1.   Denial of Medical Care–State Law Negligence Claim

Defendant moves for summary judgment on Horob's state law medical negligence claim.  In Montana, a negligence action requires proof of four elements:  existence of a duty; breach of the duty; causation; and damages.  Gentry v. Douglas Hereford Ranch, Inc., 1998 MT 182, ¶ 24, 290 Mont. 126, ¶ 24, 962 P.2d 1205, ¶ 24 (1998).

Defendant argues Horob cannot establish that any act of McCone County was the cause of his alleged vision issues.  Defendant first presents the testimony of Dr. Kolstad who opined that since Horob's vision was already "blurry" on the morning Deputy Skyberg transported

ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT SUMMARY JUDGMENT–CV 09-00156-BLG-RFC-CSO/ PAGE 14

him to Sidney for his initial appearance, there was nothing that could have been done to prevent the possible ischemic optic neuropathy. Since Horob was already symptomatic by the time he was picked up by a McCone County Deputy, Dr. Kolstad testified, it was already too late to prevent any vision issues.  Thus, Defendant argues there was nothing McCone County or anyone else could have done to prevent the blindness from occurring, if the blindness did occur.

In response, Horob argues his blood pressure issues had been going on for days while he was incarcerated in Valley County and he could not get medical help because McCone County refused to give Valley County permission for him to get medical treatment.  (Court Doc. 35-4 – Horob Deposition, p. 10).[1]  He argues "[a]ny doctor will tell you that high of [sic] blood pressure that is reported is a lead to a stroke."  Court Doc. 39 at 3.  He also refers to Dr. Kolstad's testimony that

---

[1]Although not mentioned by either party, the Court notes that the April 14, 2009 Judgment and Order of Suspended Sentence required Horob to pay McCone County $10,508.06, the cost of medical expenses incurred by Horob during the twelve days he was in McCone County's custody at the Valley County Detention Facility from November 28, 2006 to December 9, 2006.  (Court Doc. 35-1, p. 4).

ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT SUMMARY JUDGMENT–CV 09-00156-BLG-RFC-CSO/ PAGE 15

"Blood pressure gets too high, things can pop, things can leak."  (Court Doc. 35-6--Kolstad Deposition, p. 10, lines 21-27).  Horob contends that had he got medical attention for his high blood pressure sooner the vision in his left eye could have been saved.  But he presents no admissible medical evidence to raise a genuine issue of material fact on this issue.

Defendant argues evidence of causation must be proved with expert medical testimony unless the cause of the injury is obvious. Moralli v. Lake County, 255 Mont. 23, 30-31, 839 P.2d 1287, 1291 (1992); Cain v. Stevenson, 218 Mont. 101, 105, 706 P.2d 128, 131 (1985). Horob presents no other expert testimony.  The only testimony regarding causation came from Horob when he opined that any doctor would say high blood pressure can cause a stroke.

Rule 56(e) of the Federal Rules of Civil Procedure require testimony in support of a motion for summary judgment be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."

Horob is not trained in medical issues and has given no basis upon

which to indicate he is competent to testify regarding the complicated medical issues involved in this case.  Without competent testimony to establish that Horob's high blood pressure was the cause of his vision issues, Horob cannot demonstrate causation.  Summary judgment therefore, should be granted on all state law medical claims.

2.  <u>Denial of Medical Care–Federal claims</u>

Although Defendant moved for summary judgment on all claims, Defendant did not specifically brief issues relating to a federal medical care claim.  But a district court may enter summary judgment"if the losing party has had a 'full and fair opportunity to ventilate the issues involved in the matter.' "  <u>Gospel Missions of America v. City of Los Angeles,</u> 328 F.3d 548, 553 (9th Cir. 2003)(<u>quoting Cool Fuel, Inc. v. Connett</u>, 685 F.2d 309, 312 (9th Cir. 1982).  A party opposing summary judgment must have 'reasonable notice that the sufficiency of his or her claim will be in issue.' "  <u>Greene v. Solano County Jail</u>, 513 F.3d 982, 990 (9th Cir. 2008)  (<u>quoting Buckingham v. United States</u>, 998 F.2d 735, 742 (9th Cir. 1993)).

As discussed below, the Court concludes that Horob has had

reasonable notice that the sufficiency of all his claims is at issue.

Defendant moved for summary judgment on the state medical care

claims on the basis of causation.  Horob's inability to establish

causation as set forth above is also fatal to his federal medical care

claim.

Because the only Defendant is McCone County, the Court must

presume that any federal claim would be brought pursuant to Monell v.

Dept. of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d

611 (1978).  Monell provides that in order to establish liability against a

county, a plaintiff must show that his constitutional rights were

violated pursuant to a policy, practice, or custom of the County and that

this government action is the "moving force" behind the alleged

constitutional violation.  Monell, 436 U.S. at 694.

Without competent testimony to establish that Horob's high blood

pressure was the cause of his vision issues, there is no basis upon which

to establish that McCone County was the moving force behind the

alleged constitutional violation.  Therefore, summary judgment should

also be granted on any federal claims of denial of medical care.

### 3.  Accessibility of the McCone County Courthouse

Although Horob raises factual allegations regarding the accessibility to the McCone County Courthouse, it is unclear whether he is suing under Montana's Human Rights Act or the federal Americans with Disabilities Act.  Defendant moved for summary judgment on both grounds.  Horob produced no evidence in support of these claims and thus they too will be recommended for dismissal.

### a.  Americans with Disabilities Act Claim

Defendant presumes Horob is suing under 42 U.S.C. § 12132, which states:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

Thus, to state a claim under this section of the ADA, a plaintiff must allege:  (1) that he is a qualified individual with a disability, (2) that he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated against by such entity; (3) by reason of such disability.

ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT SUMMARY JUDGMENT–CV 09-00156-BLG-RFC-CSO/ PAGE 19

Defendant contends Horob is not a qualified individual with a disability as defined by the statute.  42 U.S.C. § 12102 defines disability as:  "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Defendant argued that Horob provided no evidence that he had a physical impairment that substantially limited a major life activity. Moreover, Defendant argues Horob could not be regarded as having an impairment since the only date on which there is evidence that Horob was in a wheelchair was on April 2, 2009 and an individual is not regarded as having an impairment if the impairment is transitory (less than six months).  See 42 U.S.C. § 12102(3)(B).

Because Horob provided no evidence as to what disability he suffered from on April 2, 2009, it is impossible to find that he is a qualified individual with a disability.  As such, summary judgment on the ADA claim is proper.

b. Montana Human Rights Act Claim

The Montana statute governing discrimination in public

accommodations is Mont. Code Ann. § 49-2-304(1)(a) which makes it

unlawful to refuse, withhold from, or deny to a person any of its services

because of physical disability.  But a party is not permitted to file suit

until administrative remedies are exhausted.  Mont. Code Ann. § 49-2-

512(1).  Horob testified at his deposition that he did not file a complaint

with any state or federal agency regarding the lack of accessibility to

the McCone County Courthouse.  (Court Doc. 35-4--Horob Deposition, p.

16, Line 5-14).  Nor did he produced any such filing in response to

Defendant's motion.

Moreover, as discussed above, there is no evidence that Horob was

actually disabled on April 2, 2009.  Therefore, summary judgment is

also appropriate on any Montana Human Rights Act claims.

## VI. CONCLUSION

As a matter of law, Horob has failed to produce sufficient evidence

to survive Defendant's Motion for Summary Judgment.  Horob did not

sufficiently rebut Defendant's contention that there is no genuine issue

of material fact and that McCone County is entitled to judgment as a

matter of law.  Horob failed to produce sufficient evidence to prove his

claims, and therefore the Court should certify that any appeal of this matter would not be taken in good faith.

At all times during the pendency of this action, Horob SHALL IMMEDIATELY ADVISE the Court of any change of address and its effective date. Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS." The notice shall contain only information pertaining to the change of address and its effective date, except if Horob has been released from custody, the notice should so indicate. The notice shall not include any motions for any other relief. Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Based on the foregoing, the Court issues the following:

## ORDER

1. Horob's Motion to Vacate (Court Doc. 45) is denied.

2. Horob's Motion to Amend (Court Doc. 49) is denied.

3. Horob's Motion to Test Court Record (Court Doc. 51) is denied.

Further, the Court issues the following:

## RECOMMENDATIONS

ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT SUMMARY JUDGMENT–CV 09-00156-BLG-RFC-CSO/ PAGE 22

1.  Defendant's Motion for Summary Judgment (Court Doc. 34) should be granted.

2.  The Clerk of Court should be directed to enter judgment in favor of Defendant and close this case.

3.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  Horob failed to produce sufficient evidence to support his claims and as such, no reasonable person could suppose that an appeal would have merit.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing.  As this deadline allows a party to act after the Findings and Recommendations is served, it falls under Fed.R.Civ.P. 6(d).  Therefore, three (3) days are added after the period would

otherwise expire.

Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 23rd day of November, 2010.

/s/ *Carolyn S. Ostby*
United States Magistrate Judge

ORDER AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT SUMMARY JUDGMENT–CV 09-00156-BLG-RFC-CSO/ PAGE 24